UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ANDRES RAMIREZ, ANKUR DATTA, BART ROBINSON, GERARD TAYLOR, JENNIFER KAY POWERS, and MARISA NANCI GIANFORTUNE,<br><br>Plaintiffs,<br><br>v.<br><br>TWITTER, INC. and X CORP.,<br><br>Defendants. | Case No. _____<br><br>**JURY DEMANDED** |

## COMPLAINT

**I.   INTRODUCTION**

1. This case is brought by Plaintiffs, who are former Twitter employees, against Defendants Twitter, Inc. and X Corp. (collectively "Twitter"), challenging the company's failure to pay promised severance to employees following Elon Musk's purchase of the company in 2022. Plaintiffs bring their claims based on breach of contract and of promissory estoppel.

2. As described further below, in October 2022, the world's richest man, Elon Musk, purchased Twitter and immediately began laying off 80% of its workforce. Employees had been promised that, should they lose their jobs after the sale of the company, they would be entitled to severance pay, pursuant to Twitter's pre-acquisition severance policy. However, following Musk's purchase of the company, Twitter reneged on this promise and did not pay the employees, including Plaintiffs, the promised severance.

**II.     PARTIES**

3. The above-listed Plaintiffs are former employees who worked for Twitter in Massachusetts and who lost their jobs following Elon Musk's purchase of the company in October 2022.

4. Defendant Twitter, Inc. is a Delaware Corporation, headquartered in San Francisco, California. Defendant X Corp. is a Nevada Corporation, headquartered in San Francisco, California. In or about March 2023, Twitter merged with X Corp., and as a result, Twitter and X Corp. are a single entity. X Corp. has successor liability for Twitter's unlawful acts. Twitter and X Corp. are referred to herein as "Twitter."

**III.    JURISDICTION**

5. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the underlying matters in controversy exceed the sum or value of $75,000, exclusive of interest and costs, and Plaintiffs reside in Massachusetts.

6. This Court has personal jurisdiction over Twitter, Inc. and X Corp. because these entities are doing business in this district.

**IV.    STATEMENT OF FACTS**

7. Twitter (now known as "X") is a social media company that formerly employed thousands of people across the United States and the world.

8. In April 2022, it was announced that multi-billionaire Elon Musk would be purchasing the company.

9. Following this announcement, many employees raised concerns regarding the company's policies following this anticipated acquisition, including concerns about how Elon Musk would run the company, as well as concerns of possible mass layoffs.

10. In order to assuage employees' concerns and try to prevent them from leaving Twitter *en masse* to work at other companies, Twitter made various promises to employees, including Plaintiffs.

11. One important promise Twitter made was that, for a year after the acquisition, Twitter would maintain the same wages and benefits for employees, including severance benefits, in the event the employees lost their jobs after the acquisition.

12. This promise that severance benefits would stay the same for a year following Mr. Musk's acquisition of the company was communicated directly to Twitter employees, including Plaintiffs, both orally (including at periodic "all-hands" meetings and other meetings with management), as well as in writing by Twitter's management.

13. The promise that severance pay would remain at least as favorable as it was prior to Musk's acquisition was communicated by Twitter to its employees, including Plaintiffs, in writing through distribution of a Frequently Asked Questions (FAQs) document.

14. Plaintiffs reasonably relied on this promise and maintained their employment at Twitter, rather than seeking job opportunities elsewhere. They did so to their detriment.

15. Following the purchase of the company by Elon Musk in late October 2022, Twitter openly reneged on this promise.

16. Shortly after he acquired the company, Musk immediately began a mass layoff that led to the ouster of about 80% of Twitter's workforce, including Plaintiffs.

17. The layoffs began with approximately half of the workforce notified of their layoff on November 4, 2022, with an effective date of January 4, 2023. See Kate Conger, Ryan Mac, and Mike Isaac, Confusion and Frustration Reign as Elon Musk Cuts Half of Twitter's

Staff, NEW YORK TIMES (November 4, 2022), https://www.nytimes.com/2022/11/04/technology/elon-musk-twitter-layoffs.html.

18. Over the following weeks and months, Twitter continued the layoffs. See Ryan Morrison, Twitter 'lays off 10% of its global workforce' in Elon Musk's latest job cuts, TECHMONITOR (February 27, 2023, updated March 9, 2023) ("The Company's headcount is down 75%."), https://techmonitor.ai/policy/digital-economy/twitter-job-cuts-elon-musk.

19. Further mass layoffs occurred after Musk sent the following message to remaining Twitter employees on November 16, 2022:

> Going forward, to build a breakthrough Twitter 2.0 and succeed in an increasingly competitive world, we will need to be extremely hardcore. This will mean working long hours at high intensity. Only exceptional performance will constitute a passing grade.
>
> Twitter will also be much more engineering-driven. Design and product management will still be very important and report to me, but those writing great code will constitute the majority of our team and have the greatest sway. At its heart, Twitter is a software and servers company, so I think this makes sense.
>
> If you are sure that you want to be part of the new Twitter, please click yes on the link below:
>
> [LINK]
>
> Anyone who has not done so by 5pm ET tomorrow (Thursday) will receive three months of severance.
>
> Whatever decision you make, thank you for your efforts to make Twitter successful.
>
> Elon

20. This ultimatum was intended to, and did, result in further layoffs. More than 1,100 employees did not click "yes" in response to this email and were notified the next day that their employment would end two months later.

21. Twitter's previous policy had provided for greater severance pay for employees than was offered to Plaintiffs. The previous severance policy had provided for a lump sum payment of at least two months' pay (six months for Director-level employees and above) plus an additional week of pay for each full year of employment, 100% target bonus pay, cash value of equity that would have vested within three months from the separation date (six months for Director-level employees and above), and a cash contribution for health care continuation. However, Twitter only offered employees one month or less base salary for severance.

22. Plaintiffs did not accept this reduced offer of severance and now bring these claims to recover the severance pay that had been promised to them.

23. The two months pay that most employees received (three months for Massachusetts employees) while remaining on payroll following their notification of layoff and their final separation date was not severance pay. Instead, Twitter offered this period of continued payment to employees to comply with federal and Massachusetts WARN Acts (29 U.S.C. §§ 2101 *et seq.* and Massachusetts General Laws c. 151A, §§ 71A *et seq.*).

24. Employees (including Plaintiffs) had reasonably relied to their detriment on Twitter's earlier promise that employees who lost their jobs after Musk's purchase of the company would receive at least as favorable severance pay as they would have received prior to his purchase of the company and that employees would be permitted to work remotely. Based on those promises, they did not seek or obtain employment elsewhere during the uncertain period prior to Musk's purchase of the company.

## COUNT I
**Breach of Contract**

As set forth above, from approximately April 2022 through October 2022, Twitter repeatedly informed employees (including Plaintiffs) that in consideration for the employees' continued willingness to work for Twitter, if they lost their jobs following Elon Musk's purchase of the company, they would receive severance pay that was no less favorable than what Twitter employees previously received. However, following Musk's purchase of the company, Twitter breached that contract. After Plaintiffs were laid off, Twitter did not offer them severance packages that were at least as favorable as those Twitter provided to employees prior to the acquisition.

## COUNT II
**Promissory Estoppel**

From approximately April 2022 through October 2022, Twitter repeatedly informed employees (including Plaintiffs) that if they lost their jobs following Elon Musk's purchase of the company, they would receive severance pay that was no less favorable than what Twitter employees previously received. In reasonable reliance on this promise, Plaintiffs continued to work for Twitter, rather than looking for an accepting other job opportunities. However, following Musk's purchase of the company, Twitter reneged on this promise. After Plaintiffs were laid off, Twitter failed to offer them severance packages that were no less favorable than those Twitter provided to employees prior to the acquisition. Plaintiffs were harmed by their reliance on these promises, including that they lost the opportunity to obtain other employment, when the job market was more favorable.

**JURY DEMAND**

Plaintiffs request a trial by jury on their claims.

WHEREFORE, Plaintiffs request that this Court enter the following relief:

a.      Declare and find that Defendants are liable to Plaintiffs as the result of Defendants' breach of contract with Plaintiffs;

b.      Declare and find that Defendants are liable to Plaintiffs under the doctrine of promissory estoppel;

c.      Award compensatory damages, in an amount according to proof;

d.      Aware pre- and post-judgment interest; and

e.      Award such other relief to which Plaintiffs may be entitled.

Respectfully submitted,

PETITIONERS ANDRES RAMIREZ et al,

By their attorneys,

/s/ *Shannon Liss-Riordan*
Shannon Liss-Riordan, BBO #640716
Thomas Fowler, BBO #688521
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800
Email: sliss@llrlaw.com, tfowler@llrlaw.com

Dated:      May 2, 2025